UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACKIE K. BUCKHOLZ,

                                        Plaintiff,

        v.

NANCY BERRYHILL, Acting Commissioner
of Social Security,

                                        Defendant.

Case No. 3:17-cv-05715-TLF

ORDER REVERSING AND
REMANDING FOR FURTHER
PROCEEDINGS

Jackie K. Buckholz has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court reverses the Commissioner's decision denying benefits and remands for further administrative proceedings.

I.  BACKGROUND

On June 11, 2014, Ms. Buckholz filed an application for supplemental security income benefits. Dkt. 14, Administrative Record (AR) 20. She alleged in her application that she became disabled beginning January 1, 2008; the Administrative Law Judge (ALJ) determined the

ORDER - 1

operative date concerning the payment of any disability benefits would be June 11, 2014.[1] *Id.*
Her application was denied on initial administrative review and on reconsideration. *Id.* A hearing
was held before an administrative law judge (ALJ) on March 4, 2016. AR 41-76. Ms. Buckholz
and a vocational expert appeared and testified.

The ALJ found that Ms. Buckholz could perform jobs that exist in significant numbers in
the national economy, and therefore that she was not disabled. AR 20-35 (ALJ decision dated
August 29, 2016). The Appeals Council denied Ms. Buckholz's request for review on July 19,
2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Buckholz
appealed that decision in a complaint filed with this Court on September 8, 2017. Dkt. 8; 20
C.F.R. § 416.1481.

Ms. Buckholz seeks reversal of the ALJ's decision and remand for an award of benefits
or, alternatively, for further administrative proceedings including a new hearing. She argues that
the ALJ misapplied the law and lacked substantial evidence for his decision. She contends that
the ALJ constructively reopened her prior disability period by considering evidence that predates
the current relevant period. She further contends the ALJ erred in failing to obtain missing
medical treatment records.

And Ms. Buckholz contends that the ALJ erred at steps two and five of the five-step
criteria. At issue here: The ALJ's step-two determination about which of Ms. Buckholz's
impairments qualify as "severe," the ALJ's consideration of the medical opinion evidence in
assessing Ms. Buckholz's residual functional capacity (RFC), and the ALJ's consequent finding

---

[1] The ALJ considered the relevant period for determining disability to begin on the date Ms. Buckholz filed her
application. *See* AR 20; 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335.

at step five that Ms. Buckholz can perform jobs existing in significant numbers in the national economy.

For the reasons set forth below, the undersigned concludes that the ALJ did not properly apply the law in weighing the medical opinion evidence and substantial evidence does not support the decision. Consequently, the undersigned reverses the decision to deny benefits and remands for an administrative hearing.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.*

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

ORDER - 3

accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III.  REOPENING OF PRIOR ADJUDICATION PERIOD

Ms. Buckholz first contends that the ALJ "constructively reopened" her prior disability applications when the ALJ considered evidence from the period relevant to those applications. Dkt. 18, p. 2. Ms. Buckholz filed three applications before the one at issue, each alleging a disability onset date of January 1, 2008. AR 92. The relevant period for the ALJ decision at issue here is June 11, 2014, the date of Ms. Buckholz's current application. AR 20; *see* 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335.

Res judicata applies in social security cases and normally bars a plaintiff from asserting the same claim in a subsequent proceeding as was already advanced in a prior proceeding. The Social Security Administration may, on its own initiative or on the suggestion of the plaintiff, choose to reopen a prior determination. 20 C.F.R. § 416.1487(b). But "[r]es judicata does not

ORDER - 4

apply when an ALJ later considers 'on the merits' whether the claimant was disabled during an already-adjudicated period." *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001) (quoting *Lester v. Chater*, 81 F.3d 821, 827 n.3 (9th Cir. 1995)). An ALJ who determines whether the claimant was disabled in the prior period de facto, or constructively, reopens the prior adjudication. *Id.* Merely considering evidence from the time period covered by a prior application, however, does not de facto reopen that adjudication. *See King v. Chater*, 90 F.3d 323, 325 (8th Cir. 1996); *Frustaglia v. Sec'y of Health and Human Servs.*, 829 F.2d 192, 193 (1st Cir. 1987); *McGowen v. Harris*, 666 F.2d 60, 67–68 (4th Cir. 1981).

Here, Ms. Buckholz contends the ALJ "readjudicated disability with regard to the time period of the former claim, noting Plaintiff's alleged disability beginning January 1, 2008." Dkt. 18, p. 3. This assertion is not supported. The ALJ repeatedly recognized June 2014 as the start of the relevant period and partially discounted a doctor's opinion because it was offered in 2008, "several years prior to" the relevant period. AR 20, 22, 29. The ALJ did not state or imply that he was determining whether Ms. Buckholz was disabled as of June 2008. AR 20-35.

Instead, the record shows the ALJ reviewed medical evidence predating the current relevant period as part of the normal review of cumulative medical history. The ALJ did not address the merits of prior claims and did not de facto or constructively reopen Ms. Buckholz's prior application. *See Frustaglia*, 829 F.2d at 193.

Ms. Buckholz also points out that the only opinions the ALJ accorded "great weight" were those of Robert Schneider, Ph.D., given in February 2012, and two state agency reviewing psychologists, given in August and October 2014 based on records from 2008 to 2014. AR 30, 32; *see* AR 85, 99, 351. Ms. Buckholz's point is well-taken; as discussed below, the ALJ erred in weighing the medical opinion evidence. The ALJ on remand should evaluate the relative

evidentiary weight that is appropriate for the medical records that are more remote in time—in comparison to the medical records containing evidence that is temporally closer to the relevant period of June 14, 2014 to present.

## IV.  THE ALJ'S STEP TWO DETERMINATION

At step two of the sequential evaluation process, the ALJ must determine whether an impairment is "severe." 20 C.F.R. § 416.920. In this case, the ALJ determined that Ms. Buckholz had five severe impairments: degenerative disc disease, depression, anxiety, posttraumatic stress disorder (PTSD), and substance addiction disorder. AR 22. Ms. Buckholz contends that the ALJ erred in failing to find her combined foot problems, including plantar fasciitis, to also be a severe impairment at step two.

An impairment is not "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(c); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b); SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). The court

ORDER - 6

noted that an ALJ assessing a claimant's RFC before steps four and five "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Buck*, 869 F.3d at 1049. The Ninth Circuit concluded, in the case before it, that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Id.* (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

The same is true here. Because the ALJ decided step two in Ms. Buckholz's favor, the ALJ was required to consider evidence of any and all impairments, severe or not, in assessing Ms. Buckholz's RFC. *See Buck*, 869 F.3d at 1049.

Ms. Buckholz likens her case to *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012). There, the Ninth Circuit Court of Appeals found that the ALJ erred in failing to consider evidence of the effects of the claimant's panic disorder in assessing her RFC. 698 F.3d at 1161. The court did not find that the ALJ's failure to include panic attacks in the list of impairments at step two was reversible error on its own. *Id. Buck* precludes such a finding here. *See* 869 F.3d at 1049.

To the extent that Ms. Buckholz contends that the ALJ erred in failing to incorporate impairments from foot conditions (plantar fasciitis, heel bone spur, and osteochondral defect) into Ms. Buckholz's RFC, *see* Dkt. 20, p. 3, that argument is addressed below with respect to the ALJ's discussion of medical opinions on Ms. Buckholz's physical health.

ORDER - 7

# V.  THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

Ms. Buckholz asserts that the ALJ erred in rejecting numerous medical opinions on both her physical and mental health. The Court agrees that the ALJ gave insufficient reasons to reject several opinions on Ms. Buckholz's mental health.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels*, 874 F.3d at 654. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific

and legitimate reasons" to reject that opinion. *Id.* "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes*, 881 F.2d at 751). In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995). In addition, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinion of a non-examining physician does not, standing alone, constitute substantial evidence concerning the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

Finally, a nurse practitioner is an "other medical source," who is "not technically deemed to be" an "acceptable medical source," but whose opinion nevertheless is considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence" in the record. SSR 06-03p, 2006 WL 2329939 *3; 20 C.F.R. § 404.1513(d)(1). When an ALJ rejects the opinion of an "other medical source," the ALJ must give germane reasons for doing so. *Molina*, 674 F.3d at 1111; *Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016).

A.    The ALJ's Consideration of Medical Evidence at Steps Three, Four, and Five

At step three of the five-step "sequential evaluation process," the ALJ determined that Ms. Buckholz does not have an impairment or combination of impairments that meets the criteria of an impairment listed in the regulations. AR 19; *see* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Ms. Buckholz does not challenge this determination.

ORDER - 9

Before determining at steps four and five whether Ms. Buckholz is disabled, the ALJ performed a more detailed assessment of the medical evidence to arrive at Ms. Buckholz's residual functional capacity (RFC). The Commissioner uses a claimant's RFC assessment at steps four and five to determine whether he or she can perform his or her past relevant work and whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.* The ALJ based his assessment of Ms. Buckholz's RFC on an examination of the medical evidence, and in part on his rejection of the opinions of several medical professionals that Ms. Buckholz's mental and physical impairments would significantly limit her ability to perform functions necessary to hold a job. AR 24-33.

The ALJ found that Ms. Buckholz had the RFC

**to perform light work as defined in 20 CFR 416.967(b) with exceptions. She can lift and carry, and push and pull, up to ten pounds frequently and 20 pounds occasionally. She can sit up to six hours in an eight hour workday, and she can stand and walk up to six hours total in an eight hour workday. She can frequently climb ladders and scaffolds, stoop, kneel, crouch and crawl. She is precluded from working at unprotected heights, working around heavy operating machinery, or operating a motor vehicle. She can perform simple tasks and make simple work related decisions. She can have only superficial contact with the general public.**

AR 24 (emphasis in original).

Using this RFC, the ALJ determined at step four that Ms. Buckholz could not perform her past work as a cashier. AR 33. Ms. Buckholz does not challenge that finding.

Finally, the vocational expert testified that a person with Ms. Buckholz's RFC could work as a marker, garment sorter, and office helper. AR 73-74. Based on that testimony, the ALJ found Ms. Buckholz not disabled at step five. AR 34.

ORDER - 10

1.     The ALJ Failed to Give Legally Sufficient Reasons to Discount Several Opinions on Ms. Buckholz's Mental Health.

In the context of mental illness, it is error for the ALJ to reject medical opinion evidence on the basis that the record shows some instances of improvement over a period of months or years.  *See Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) (statements by a doctor—hat a claimant who suffers from mental illness such as panic attacks, anxiety, and depression has made some amount of improvement—must be "read in the context of the overall diagnostic picture he draws"). Treatment records must be reviewed "in light of the overall diagnostic record." *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014). Cycles with periods of improvement and periods of debilitating symptoms will commonly happen in mental illness cases, because during treatment the claimant's symptoms wax and wane. *Diedrich v. Berryhill,* 874 F.3d 634, 642 (9th Cir. 2017).

In this case, the ALJ considered numerous treating and examining medical sources opinions regarding Ms. Buckholz's mental health between 2008 and 2016. AR 28-33. Of these, the ALJ gave "limited," "partial," or "little weight" to all except Dr. Schneider's 2012 examining opinion and the opinions of "State agency consultants." *Id.* By this, the ALJ presumably meant the August and October 2014 reviewing opinions of Jan Lewis, Ph.D., and Beth Fitterer, Ph.D. AR 78-87, 91-100.

No examining or treating source gave opinions that contradicted the opinions that the ALJ rejected, and the ALJ made no such finding. *See* AR 28-33. The opinions that did contradict those the ALJ rejected were based on evidence outside the relevant time period: Dr. Schneider offered his opinion two years before the alleged onset date. AR 20, 351. And the state agency consultants reviewed Ms. Buckholz's records as of August and October 2014—just two and four months past the alleged onset date. Non-examining, non-treating sources are not, by themselves,

ORDER - 11

substantial evidence for rejecting treating source opinions. *Lester*, 81 F.3d at 831. Accordingly, the treating and examining opinions were uncontradicted and the ALJ was required to give clear and convincing reason to reject them. *See id.* The Court notes, however, that with respect to the sources discussed below the ALJ's reasons would not pass the lower bar of specific and legitimate reasons, either. *See id.*

a.      Dr. Hartinger's Examining Opinion

Wendy Hartinger, Psy.D., met with Ms. Buckholz and completed a "Psychological / Psychiatric Evaluation" in February 2015. AR 488. She performed a clinical interview, personality testing, and a mental status exam. She observed that Ms. Buckholz's performance on "validity scales" as part of a personality test indicated that Ms. Buckholz was "essentially attempting to 'fake bad'" on the test. AR 489. Dr. Hartinger nonetheless diagnosed Ms. Buckholz with depression, anxiety, PTSD, and grief. *Id.* She opined that Ms. Buckholz would be markedly limited in performing activities within a schedule, maintaining regular attendance, and being punctual without special supervision, and in completing a normal workday and work week without interruptions from psychological symptoms. AR 490. She opined that Ms. Buckholz would be moderately limited in several other areas. *Id.* She estimated that with available treatment Ms. Buckholz's impairments would last for six months. AR 491.

The ALJ gave Dr. Hartinger's opinions "limited weight." He stated that Dr. Hartinger "did not explain why she chose apparently to ignore" the findings of the personality test "and instead base her opinions on the claimant's subjective reports and presentation." AR 31. And he found that Dr. Hartinger's "opinions are inconsistent with the claimant's activities of daily living as described above, which include her ability to care for her daughter independently and complete substance abuse treatment." *Id.*

ORDER - 12

The ALJ's reasons for rejecting Dr. Hartinger's opinion are not clear and convincing or supported by substantial evidence.

With respect to the ALJ's first reason, the record does not support the ALJ's statement that Dr. Hartinger "did not explain why she chose apparently to ignore" the findings of the personality test "and instead base[d] her opinions on the claimant's subjective reports and presentation." AR 31. Dr. Hartinger did explain how she used the results of the personality test: because "the elevations indicated an invalid profile," Dr. Hartinger discarded the test results. AR 489.

The ALJ's statement that Dr. Hartinger based her opinions on Ms. Buckholz's "subjective reports and presentation" is also unsupported. In addition to conducting a clinical interview, Dr. Hartinger performed a mental status exam. That exam noted Ms. Buckholz as anxious, losing her train of thought often, showing a dysphoric mood and affect, and having indicators outside normal limits with respect to memory, fund of knowledge, and abstract thought. AR 491-92.

> 'The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology.' . . . Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). Although the ALJ may disagree with Dr. Hartinger's opinion, Dr. Hartinger was not required to discard her objective and subjective evaluations because the personality test showed Ms. Buckholz exaggerated her symptoms. Dr. Hartinger was in the better position to evaluate Ms. Buckholz in light of her exaggerations. *See Schmidt v. Sullivan*, 914

ORDER - 13

F.2d 117, 118 (7th Cir. 1990) (ALJs "must be careful not to succumb to the temptation to play doctor").

The Commissioner offers no argument in defense of the ALJ's second reason for rejecting Dr. Hartinger's opinion. That reason is neither specific nor legitimate. The "mere fact" that a claimant "cares for small children does not constitute an adequately specific conflict with her reported limitations." *Trevizo*, 871 F.3d at 682. As in *Trevizo v. Berryhill*, the ALJ here did not describe activities that would be "'transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Instead, the ALJ noted that Ms. Buckholz cared for a daughter and completed substance abuse treatment, with no detail of what those activities entailed. AR 31. In addition, the record indicates that, contrary to the ALJ's determination, Ms. Buckholz's activities of daily living were actually quite limited. AR 213-14 (trouble getting up to do chores; daughter helps her with laundry; does not like to go outside), 222 ("doesn't do anything besides sits or lays around watching tv"), 353 (reported that she "does not like to cook, shops for the basics and does not really clean" and "sits around all day"), 485 ("She described a very isolated existence," with limited household activities and self-care and no socializing).

The ALJ thus erred in rejecting Dr. Hartinger's opinion.

b.   Dr. Ruddell's Examining Opinion

Alyssa Ruddell, Ph.D., examined Ms. Buckholz in December 2015. AR 517. Dr. Ruddell reviewed Dr. Hartinger's evaluation and performed her own clinical interview and mental status exam. AR 517-20. In the exam, she noted depressed mood, contradictory or inconsistent

ORDER - 14

information, reported hallucinations and paranoia, and impaired indicators of memory, concentration, abstract thinking, and insight and judgment. AR 520.

Dr. Hartinger found that Ms. Buckholz experienced moderate anxiety, marked depression, moderate "health problems" that could lead to absenteeism, poor focus and concentration, and errors at work, marked insomnia, and moderately impaired social relationships. AR 518. She opined that Ms. Buckholz would be markedly limited in her ability to: understand, remember, and persist in tasks by following short and simple instructions and by following detailed instructions, learn new tasks, adapt to changes in work setting, maintain appropriate behavior at work, complete a normal workday and work week without interruptions from psychological symptoms, set realistic goals and plan independently. AR 519. She opined that Ms. Buckholz would also be moderately limited in several other areas. *Id.* She estimated that these limitations would last 12 months. *Id.*

The ALJ gave Dr. Ruddell's opinion "limited weight." AR 32. He explained that Dr. Ruddell based her opinion on only one meeting with Ms. Buckholz and that Ms. Buckholz's presentation was inconsistent with her presentation to her treatment providers. In particular, he cited two treatment notes from within three months of Dr. Ruddell's examination. In one, the provider noted Ms. Buckholz to have an "improved" mood, stating "I'm okay, I guess" and reporting "very good" sleep. AR 603. In the other, a mental status exam noted her mood and affect as "mildly anxious," no evidence of hallucinations, and otherwise unremarkable findings. AR 568.

This analysis of Dr. Ruddell's opinion was not clear and convincing. The frequency of examinations is one factor in weighing an examining source's opinion, 20 C.F.R. § 416.927(c), but the ALJ must give specific and legitimate reasons to reject the examining doctor's opinion

even when the opinion is based on one encounter. And although the ALJ has the responsibility of determining inconsistencies in the evidence in the first instance, it is error to "cherry pick" evidence that disfavors disability while ignoring evidence that favors disability. *Morgan*, 169 F.3d at 603; *Ghanim*, 763 F.3d at 1164. Here, the record as a whole shows that Ms. Buckholz's "presentation" at treatment visits consistently included signs of depression, anxiety, and PTSD. *See* AR 337, 386, 393, 416, 433, 568, 590, 595 (mental status exams at treatment visits showed consistently depressed and anxious mood, alternating talkativeness, tearfulness, mumbling, paranoia, and reported hallucinations). Thus, the record lacks substantial evidence for the ALJ's finding that Ms. Buckholz's usual "presentation" contradicted Dr. Ruddell's opinion.

c.  <u>Dr. Burdge's Reviewing Opinion</u>

Aaron Burdge, Psy.D., reviewed Ms. Buckholz's medical records for the Washington Department of Social and Health Services in February 2015 and January 2016. AR 513, 532. He completed two check-form opinions. *Id.* He found that objective evidence supported Ms. Buckholz's diagnoses, including major depressive disorder, panic disorder, and PTSD. AR 513, 531. He found six months to be "a reasonable duration" in 2015, but in 2016 he estimated a twelve-month duration. AR 513, 531.

In 2015, Dr. Burdge noted the same marked limitations as Dr. Hartinger: to Ms. Buckholz's ability to perform activities within a schedule, maintain regular attendance, and be punctual without special supervision, and to complete a normal workday and work week without interruptions from psychological symptoms. AR 533; *see* AR 491. He also noted "[s]everal psychometric tests indicate extreme over-reporting of symptoms over the last 3 years." AR 531. In 2016, he found Ms. Buckholz to be moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual without special supervision. He

found that she was still markedly limited in her ability to complete a normal workday and work week without interruptions from psychological symptoms. AR 514. He also indicated in 2016 that Ms. Buckholz had additional marked limitations in her ability to understand, remember, and persist in tasks by following short and simple instructions as well as in following detailed instructions, in learning new tasks, in adapting to changes in work setting, in maintaining appropriate behavior at work, and in setting realistic goals and planning independently. *Id.*

The ALJ gave Dr. Burdge's opinions "little weight," explaining that "[h]e is not an examining doctor" and that "his opinions are not consistent with the medical record of evidence as a whole as described above that shows [Ms. Buckholz's] symptoms are generally controlled with treatment." AR 31.

This was an insufficient analysis. Dr. Burdge's status as a nonexamining doctor does not, by itself, justify rejecting his opinion. Non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. §§ 416.927(e)(2), 416.913a; SSR 96-6p.

Moreover, the ALJ's findings that Dr. Burdge's opinions are inconsistent with the medical record "as described above" and that Ms. Buckholz's "symptoms are generally controlled with treatment" are neither specific and legitimate nor supported by substantial evidence. AR 31. (The ALJ repeated this reason in rejecting the opinions of Sarah Groen-Coly, Ph.D., and Ilhan Conklu, M.D. *See* AR 29-30.) As it is unclear what evidence the ALJ was referring to, the statement is too vague and conclusory to justify rejecting Dr. Burdge's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Contrary to the ALJ's statement, the record does not show that Ms. Buckholz's mental health symptoms are controlled. By the medical record "as described above," the ALJ was likely referring to his review of the treatment record in his discussion of Ms. Buckholz's credibility. *See* AR 26-27. Even as that section describes the record, however, the evidence does not show that Ms. Buckholz's condition improved with treatment. Instead it shows at most that her condition "waxed and waned" throughout the relevant period and the years immediately before, but consistently supported diagnoses of PTSD, anxiety, and depression. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also* AR 337, 386, 393, 416, 433, 568, 590, 595 (mental status exams and diagnoses). In addition to those treatment records, the vast bulk of the medical opinion evidence favors disability. *See* AR 28-33.

Instead of this evidence, the ALJ's non-disability finding relies almost entirely on one examining doctor's finding, over two years before the relevant period, that Ms. Buckholz exaggerated her symptoms. *See* AR 30, 351 (evaluation by Dr. Schneider). An ALJ may disregard an opinion that is "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations . . . where those complaints have been properly discounted.'" *Buck*, 869 F.3d at 1049 (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (evidence claimant exaggerated symptoms may detract from credibility). Here, however, there is no indication that the majority of treatment records and opinion evidence indicating that Ms. Buckholz is disabled were "'premised to a large extent upon [Ms. Buckholz's] own accounts.'"

The ALJ thus erred in rejecting Dr. Burdge's reviewing opinion, as well.

ORDER - 18

d. <u>Dr. Conklu's Treating Opinion</u>

Dr. Conklu, a treating psychiatrist, completed a mental assessment in January 2012. AR 337. In a mental status exam, he noted that Ms. Buckholz's mood was very depressed, her speech was difficult to understand because she mumbled, and that she reported visual and auditory hallucinations. *Id.* He recounted her history of "many years" of depression and "psychotic symptoms" since her mother's death in 2003. He opined, "she does not seem to be stable and [is] still experiencing depressive symptoms and psychotic features in spite of all these medications including Abilify." *Id.* He diagnosed Ms. Buckholz with "Major Depressive Disorder, recurrent, severe with psychotic features" and a global assessment of functioning (GAF) score of 40.[2] *Id.*

The ALJ gave Dr. Conklu's opinion "limited weight." He explained that Dr. Conklu "appears to have based his opinions largely on the claimant's subjective complaints to him." He found that those complaints "are inconsistent with her treatment records as discussed above" because those records "show a general control over her depressive symptoms with the use of prescribed medications." AR 30.

These were not clear and convincing reasons to reject Dr. Conklu's opinion. The ALJ's reason for rejecting Dr. Conklu's opinion was the same he gave for rejecting Dr. Hartinger's. As discussed above, that reason was not supported. Like Dr. Hartinger, Dr. Conklu performed a mental status exam of Buckholz and applied his psychiatric training to evaluate both her statements and his observations of her. AR 337. "[T]he relative imprecision of the psychiatric methodology" is not a valid basis for rejecting Dr. Conklu's opinion. *Buck*, 869 F.3d at 1049.

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.' " *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). "A GAF score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting DSM-IV-TR at 32).

Moreover, as discussed above with respect to the ALJ's discussion of Dr. Burdge's opinion, the ALJ's finding that Ms. Buckholz's treatment records "show a general control over her depressive symptoms with the use of prescribed medications" is both vague and conclusory and unsupported by the record. *See, e.g.*, AR 337, 386, 393, 416, 433, 568, 590, 595. Thus, for the reasons discussed above with respect to the opinions of Dr. Hartinger and Dr. Burdge, the ALJ erred in addressing Dr. Conklu's opinions, as well.

e. <u>Mr. Gesher's Treating Opinion</u>

Ms. Buckholz also challenges the ALJ's rejection of two opinions by Hugh Gesher, MHPCP (mental health primary care provider). Ms. Buckholz acknowledges that Mr. Gesher is considered a non-acceptable or "other" medical source under the SSA regulations. Dkt. 18, pp. 7-8; *see* 20 C.F.R. 1513(a) (pre-March 2017). Nonetheless, the ALJ was required to evaluate Mr. Gesher's opinions using the same criteria as for other medical opinions, including the nature of Mr. Gesher's treatment relationship with Ms. Buckholz. *See* 20 C.F.R. § 416.927(f)(1); SSR 06-03p. The ALJ was required to give germane reasons to reject those opinions. *Molina*, 674 F.3d at 1111.

Mr. Gesher was Ms. Buckholz's primary health care provider from November 2014 to at least March 2016. AR 412, 542. He completed two form opinions, in April 2015 and March 2016. *Id.* Mr. Gesher stated in 2015 that Ms. Buckholz could not work full time without being "at risk of relapsing into deeper states of depression and anxiety" and that Ms. Buckholz "could not handle even the stress of limited, part time jobs." AR 414. He opined that her unstable moods and medications would cause her to miss at least two days of work per month. *Id.*

The ALJ rejected both of Mr. Gesher's opinions as "extreme." AR 32. He found them inconsistent with Ms. Buckholz's activities and with the record as a whole, which he stated

shows that Ms. Buckholz "generally presents as cooperative and pleasant with good eye contact, even to evaluators she met one time." AR 32. He also noted that Mr. Gesher's finding that Ms. Buckholz could manage her finances "seem contradictory to his opinion that that she is basically unable [to] understand and remember simple instructions or make simple decisions." AR 32.

These were not germane reasons to discount Mr. Gesher's April 2015 opinion. The record does not support the ALJ's characterization of that opinion as "extreme": Mr. Gesher opined that Ms. Buckholz had moderate limitation in concentration, persistence, or pace, moderate limitation in social functioning, and marked limitation in her activities of daily living, and that she would likely need to miss two or more days of work per month "due to mood instability and psychotropic medication." AR 413-14. Mr. Gesher explained the basis for each of these limitations in measured terms based on his observation of Ms. Buckholz during treatment. *Id.* These opinions were consistent with, and in some respects less restrictive, than the other examining and treating opinions during the same period. *See* AR 28-33. Further, for the reasons explained above with respect to the ALJ's discussion of opinions from Ms. Buckholz's treating and examining doctors, the ALJ lacked substantial evidence for his finding that Mr. Gesher's 2015 opinion was inconsistent with Ms. Buckholz's activities and with the record as a whole. Accordingly, the ALJ also erred in rejecting Mr. Gesher's 2015 opinion.

### f.    The ALJ's Duty to Develop the Record

Ms. Buckholz contends that the ALJ did not fulfill his duty to fully develop the record.

Disability hearings are non-adversarial. *DeLorme v. Sullivan,* 924 F.3d 841, 849 (9th Cir. 1991). An ALJ has "an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir 2001) (internal quotation marks omitted). This is particularly important when the claimant has mental impairments, even when the claimant is

ORDER - 21

represented by counsel. *DeLorme v. Sullivan,* at 849. A person with mental impairments may have extreme difficulty protecting their own interests, recalling treatment history and in complying with procedural rules. *Id.* Where evidence is ambiguous or the ALJ finds the record inadequate, the ALJ must "'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288). The ALJ can do this "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, *or keeping the record open after the hearing to allow supplementation of the record*." *Id.* (emphasis added).

Although Ms. Buckholz speculates about what the missing treatment records might contain, she does not contend that any evidence was ambiguous. *See* Dkt. 18, pp. 6-8. Thus, the ALJ's duty to conduct an inquiry was not triggered here. *See Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150). Moreover, even if that duty was triggered, the ALJ discharged it by keeping the record open for two weeks after the hearing. *See* AR 45; *Tonapetyan*, 242 F.3d at 1150. Accordingly, the ALJ did not err in failing to "fully and fairly develop the record." Nonetheless, on remand the ALJ should be diligent in seeking to obtain missing records that are relevant to Ms. Buckholz' claim.

B.    <u>Even If Error Occurred in the ALJ's Decision Concerning ARNP Yoo's and Dr. Wolfe's Opinions on Ms. Buckholz's Physical Health, Any Error Is Harmless.</u>

Ms. Buckholz asserts that the ALJ erred in considering the medical opinion evidence regarding her alleged physical impairments. Specifically, she alleges the ALJ gave inadequate reasons for discounting Advanced Registered Nurse Practitioner (ARNP) Ezy Yoo's opinion little weight while giving the opinion of Charles Wolfe, M.D., great weight.

ARNP Yoo examined Ms. Buckholz in January 2016. AR 522. ARNP Yoo also reviewed a report from a foot x-ray. AR 523. In the examination, ARNP Yoo noted tenderness. AR 529.

ARNP Yoo opined that plantar fasciitis would moderately affect Ms. Buckholz's ability to stand, walk, and lift. AR 523. And ARNP Yoo opined that hip bursitis would moderately affect Ms. Buckholz's ability to stand, walk, lift, and crouch. *Id.* ARNP Yoo concluded that Ms. Buckholz would be limited to sedentary work for three months and recommended physical therapy. AR 524.

The ALJ gave ARNP Yoo's opinion "partial weight." AR 33. He found that ARNP Yoo's opinion on Ms. Buckholz's ability to stand and walk was contradicted by Ms. Buckholz's "self report of walking long distances." AR 33. He approved of ARNP Yoo's finding that Ms. Buckholz's limitations from her foot and hip conditions would be of short duration. *Id.*

In contrast, the ALJ gave Dr. Wolfe's opinion "great weight," finding that Dr. Wolfe appropriately considered the medical evidence and lack of objective findings while taking into account Ms. Buckholz's subjective complaints. AR 33. Dr. Wolfe gave his opinion in October 2014, based on a review of the medical record to that point. AR 92-95, 97-99.

Dr. Wolfe opined that Ms. Buckholz's chronic back pain would limit her to six hours standing or walking per day and 20 pounds occasional lifting and carrying. AR 97-98. Ms. Buckholz contends that the ALJ erred in crediting Dr. Wolfe's opinion because Dr. Wolfe reviewed the record before the onset of Ms. Buckholz's plantar fasciitis and bone spur pain in November 2014. She asserts that those impairments are shown by x-ray and MRI results, tenderness in exams, and ARNP Yoo's evaluation. *See* AR 448-52, 455, 461, 494-95, 498, 522-30.

The ALJ's analysis of both opinions was sufficient. Because the social security regulations define ARNP Yoo as an "other source" rather than an "acceptable medical source," the ALJ was required to give only germane reasons to reject her opinion. 20 C.F.R. §

404.1513(d)(1) (pre-March 2017); *Molina*, 674 F.3d at 1111. Inconsistency with Ms. Buckholz's self-reported ability to take "long walks" three times per week after the alleged onset of her foot problems is such a reason, and the record supports it. *See* AR 448-49, 451; *see also Morgan*, 169 F.3d at 601-02 (ALJ may discount opinion that conflicts with claimant's daily activities). Ms. Buckholz's assertion that "a lot of walking" and a "long walk" could mean less than four blocks or 15-20 minutes is entirely speculative. *See* Dkt. 18, p. 9; *Sample*, 694 F.2d at 642 (ALJ can draw logical inferences from the evidence).

Moreover, as the Commissioner points out, the alleged error in rejecting ARNP Yoo's opinion would be harmless: even if the ALJ credited ARNP Yoo's opinion, it would not support a finding of disability because ARNP Yoo opined that Ms. Buckholz's impairment would last only three months, and because ARNP Yoo recommended treatment that Ms. Buckholz did not pursue. AR 57, 524; *see* 42 U.S.C. § 1382c(a)(3)(A) (defining disability as inability to work due to impairments that "ha[ve] lasted or can be expected to last for a continuous period of not less than twelve months"); *Warre ex rel. E.T. IV v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding disability finding not warranted where impairment is treatable).

The ALJ also did not err in considering Dr. Wolfe's opinion. An ALJ may err in discounting one opinion as inconsistent with another opinion when the latter was based on incomplete records, as in the cases Ms. Buckholz cites. *See Bakken v. Colvin*, C13-CV-05869-JLR-JLW, 2014 WL 4187308, at *5 (WD Wash Aug 25, 2014) (unpublished). But because the ALJ here gave a separate, germane reason for discounting ARNP Yoo's opinion, Ms. Buckholz has not identified any error in the ALJ's discussion of Dr. Wolfe's opinion.

Accordingly, the ALJ did not err in arriving at the physical limitations in Ms. Buckholz's RFC.

ORDER - 24

## VI. REMAND FOR FURTHER PROCEEDINGS

The Court may in its discretion remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292; *see Trevizo*, 871 F.3d at 682. If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the court should likewise remand for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

Here, Ms. Buckholz requests remand for an award of benefits, but she does not explain how her case meets the three-part "credit as true" standard required for such relief. *See Leon*, 880 F.3d at 1047. The Court instructs the ALJ to consider all medical evidence concerning Ms. Buckholz's mental health during the period beginning June 11, 2014. Because the ALJ's errors in evaluating the opinions of Dr. Hartinger, Dr. Burdge, Dr. Conklu, Mr. Gesher and Dr. Ruddell require remand, the ALJ will need to reweigh all of the medical opinion evidence pertaining to mental health. This includes the opinions of Jennifer Lovegren (formerly Dale), MHP, Dr. Groen-Coly, Kirk Johnson, Ph.D., and Erum Khalleq, M.D. Therefore, the Court does not address Ms. Buckholz's arguments as to those medical professionals.

ORDER - 25

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined Ms. Buckholz to be not disabled. The Commissioner's decision to deny benefits is therefore REVERSED, and this matter is REMANDED for further administrative proceedings.

DATED this 22nd day of May, 2018.


*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge

ORDER - 26